# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### AUGUST SESSION, 1997



**FILED**

**March 2, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **DANNY PATRICK,** | ) | **C.C.A. NO. 02C01-9701-CC-00041** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **DYER COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JOE G. RILEY** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Post-Conviction)** |

FOR THE APPELLANT:

VANEDDA PRINCE
P. O. Box 26
Union City, TN 38281

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

DEBORAH A. TULLIS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243

PHILIP BIVENS
District Attorney General

JAMES E. LANIER
Assistant District Attorney
P. O. Box E
Dyersburg, TN 38025

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

Appellant Danny Patrick appeals the trial court's denial of his petition for post-conviction relief. He presents the following issues for review: (1) whether the trial court erred in holding that Appellant received effective assistance of counsel; and (2) whether the trial court erred in concluding that its "reasonable doubt" jury instruction was constitutional.

After a review of the record, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

Appellant was convicted by a jury in the Dyer County Circuit Court of the first degree murder of Michael Ross. He received a sentence of life imprisonment with the Tennessee Department of Correction. On December 11, 1991, this Court affirmed the conviction and sentence. State v. Danny Patrick, C.C.A. No. 02C01-9105-CC-00103, Dyer County (Tenn. Crim. App., Jackson, December 11, 1991). In Appellant's first petition for post-conviction relief, the trial court determined that Appellant's counsel failed to inform him of his right to appeal from this Court to the Tennessee Supreme Court. On February 15, 1995, this Court vacated and reinstated its earlier opinion of December 11, 1991 to enable Appellant to file a delayed appeal. The Tennessee Supreme Court denied Appellant's application for permission to appeal on July 3, 1995.

On April 24, 1996, Appellant filed a motion to reopen his petition for post-conviction relief. The trial court appointed counsel for Appellant. Appellant, with the aid of counsel, filed an amended petition on July 2, 1996. The trial court conducted an evidentiary hearing. After that hearing, the court concluded that Appellant's trial counsel performed well within the range of competence and that

Appellant had not demonstrated the manner in which he was prejudiced by the alleged deficiencies in counsel's performance. The court also determined that the "reasonable doubt" jury instruction used at Appellant's trial was constitutional. Finding that Appellant's issues had no merit, the court dismissed Appellant's petition for post-conviction relief on August 23, 1996.

Specifically, Appellant alleges the following deficiencies in his counsel's representation:

(1) Failure to interview Bobby McMullin prior to trial;
(2) Failure to advise Appellant that it would be necessary for him to testify in order to present proof regarding the victim's reputation for violence; and
(3) Failure to adequately explain to Appellant his potential sentence and eligibility for parole.


## POST-CONVICTION RELIEF

Appellant contends that the trial court erred in denying his petition for post-conviction relief based upon Appellant's allegation that he received the ineffective assistance of counsel and that the jury charge on "reasonable doubt" given at his trial was unconstitutional.

In post-conviction proceedings, the Appellant bears the burden of proving the allegations raised in the petition by a preponderance of the evidence. Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Wade v. State, 914 S.W.2d 97, 101 (Tenn. Crim. App. 1995). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell, 922 S.W.2d at 500; Campbell v. State, 904 S.W.2d 594, 595-96 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## EFFECTIVE ASSISTANCE OF COUNSEL

Appellant's first contention is that the trial court erred in finding that Appellant received the effective assistance of counsel.

The Sixth Amendment provides in part, "In all criminal prosecutions, the accused shall enjoy the right. . . to have the assistance of counsel for his defense." U.S. Const. amend. 6. Similarly, the Tennessee Constitution guarantees an accused "the right to be heard by himself and his counsel. . . " Tenn. Const. art. I § 9. In Strickland v. Washington, the United States Supreme Court articulated a two-prong test for courts to employ in evaluating claims of ineffective assistance of counsel. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Tennessee Supreme Court adopted Strickland's two-part test in Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). The Strickland Court began its analysis by noting that "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 104 S.Ct. at 2064. When a convicted defendant challenges the effective assistance of counsel in a post-conviction proceeding, the Appellant bears the burden of establishing (1) deficient representation of counsel and (2) prejudice resulting from that deficiency. Strickland, 104 S.Ct. at 2064; Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). Appellant must prove that counsel's representation fell below an objective standard of reasonableness. Strickland, 104 S.Ct. at 2064. This Court is not required to consider the two prongs of Strickland in any particular order. Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996). "Moreover, if the Appellant fails to establish one prong, a reviewing court need not consider the other." Id. With regard to counsel's deficient performance, the proper measure

-4-

is that of reasonableness under prevailing professional norms.  Id. (citing Strickland, 104 S.Ct. at 2065.  Put differently, counsel's performance is required to be "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); Harris, 947 S.W.2d at 163. Respecting the prejudice prong of Strickland, the Appellant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 104 S.Ct. at 2068.

The Strickland Court emphasized that "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 2065.  "A `fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (quoting Strickland, 104 S.Ct. at 2065).  The mere failure of a particular tactic or strategy does not per se establish unreasonable representation. Id. at 369. However, this Court will defer to counsel's tactical and strategic choices only where those choices are informed ones predicated upon adequate preparation.  Goad, 938 S.W.2d at 369; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

Appellant's first allegation of deficient performance on the part of the trial counsel concerns the failure to conduct a pre-trial interview of the witness, Mr. Bobby McMullin. According to Appellant, if his lawyer had interviewed Mr. Bobby McMullin before Appellant's trial, the attorney would not have presented that testimony during trial.  Paradoxically, in his brief, Appellant admits that "McMullin's testimony was not even necessary to prove [Appellant] was

-5-

intoxicated because [another witness] had already testified as to that fact." Through McMullin's testimony, defense counsel intended to demonstrate that, due to Appellant's intoxication, he did not possess the requisite intent to commit first degree murder. However, Bobby McMullin did not testify as anticipated. McMullin testified that although Appellant had been drinking on the evening of the incident, he did not appear to be intoxicated. At Appellant's post-conviction hearing, Appellant's attorney, William Randolph, admitted that he would not have called Mr. McMullin to testify at trial if he had known that McMullin would say that Appellant did not appear intoxicated on the evening of the offense. Mr. Randolph explained that his routine practice is always to conduct an interview with every prospective witness before trial. Mr. Randolph also stated that although he had "no independent recollection" of interviewing Mr. McMullin prior to trial, he believed that he had done so.

It seems unlikely that Mr. Randolph would have departed from his standard procedure of talking with witnesses before presenting their testimony at trial. Further, given Appellant's admission in his brief that McMullin's testimony was not necessary to prove intoxication, the trial court properly concluded that Appellant failed to demonstrate prejudice as a result of McMullin's testimony, and failed to establish that the outcome of the trial would have been different had McMullin not testified. This allegation is without merit.

Respecting Appellant's second alleged deficiency, Appellant testified at the post-conviction hearing that he was not aware that his testimony would be necessary in order to present evidence of Michael Ross' reputation for violence. Appellant further testified that he would have testified had he known that this would be the only means of presenting evidence of the victim's history of violence. Additionally, Appellant explained that one reason for his refusal to

testify at his trial was that he felt that his trial was not fair. At the post-conviction hearing, Mr. Randolph explained the dilemma concerning whether or not Appellant should testify. On the one hand, defense counsel wanted to demonstrate that Michael Ross was the true aggressor. However, Mr. Randolph had advised Appellant not to testify because of his lengthy criminal record. Defense counsel opined that it "would have been shear stupidity to have put [Appellant] on the stand." Mr. Randolph stated that he permitted Appellant to make the ultimate choice about whether or not to testify. Finally, Mr. Randolph testified that he attempted to get into the record the victim's prior convictions but was not successful.

In its order denying Appellant's petition, the court emphasized that Appellant had approximately fifteen prior convictions. The record buttresses Mr. Randolph's testimony that he made a valid tactical and strategic decision to advise Appellant not to testify in his own behalf. Moreover, we cannot conclude that Mr. Randolph's advice prejudiced the outcome of Appellant's trial. This allegation is also without merit.

Finally, we find no merit in Appellant's claim that Mr. Randolph neglected to adequately explain Appellant's eligibility for parole and that this misinformation affected Appellant's decision to elect a jury trial instead of accepting the State's plea offer. In particular, Appellant asserts that he did not understand the precise nature of a life sentence. Appellant testified at his post-conviction hearing that trial counsel's investigator misinformed him that he could be paroled after serving eight years of a life sentence. Appellant further testified that "My understanding was a life sentence was 13 years" and that he thought that a life sentence always consisted of thirteen years. Mr. Randolph testified that he was certain that he and Appellant discussed the amount of time that Appellant would serve with a life

sentence. Mr. Randolph recalled that he strongly advised Appellant not to go to trial and to accept the State's plea offer of a twenty-year sentence as a Range I standard offender in exchange for pleading guilty to second degree murder.

The trial court properly concluded that trial counsel did not mislead Appellant as to the nature of a life sentence. Mr. Randolph placed on the trial record the prosecution's plea offer of twenty years for second degree murder and Appellant's express refusal to accept that offer. Although Appellant initially accepted the State's plea offer, he later rejected it in open court at the hearing in which he was to plead guilty. Against the advice of his attorney, Appellant opted to go to trial. This allegation is without merit.

## CONSTITUTIONALITY OF "REASONABLE DOUBT" JURY INSTRUCTION

Lastly, Appellant contends that the "reasonable doubt" jury instruction given at his trial contravenes his federal and state constitutional due process rights and that the trial court erred in upholding the constitutionality of the jury charge. Specifically, he asserts that this jury instruction implies a lower standard of proof than that required by due process. We disagree.

At Appellant's trial, the court charged the jury as follows:

> Reasonable doubt is that doubt engendered by an investigation of all the proof in the case and an inability, after such investigation, to let the mind rest easily as to the certainty of guilt. Reasonable doubt does not mean a captious, possible, or imaginary doubt. Absolute certainty of guilt is not demanded by the law to convict of any criminal charge, but moral certainty is required, and this certainty is required as to every proposition of proof requisite to constitute the offense.

Both the Tennessee Supreme Court and this Court previously have upheld the constitutionality of a <u>verbatim</u> jury instruction on the meaning of "reasonable doubt," finding such a jury charge to comport with both federal and state due process protections. <u>James David Carter v. State</u>, 1997 WL 641595, slip op. at 6-7 (Tenn. 1997); <u>Pettyjohn v. State</u>, 885 S.W.2d 364, 365 (Tenn. Crim. App. 1994). The Tennessee Supreme Court held in <u>State v. Nichols</u> that "the use of the phrase `moral certainty' by itself is insufficient to invalidate an instruction on the meaning of reasonable doubt." 877 S.W.2d 722, 734 (Tenn. 1994).In <u>Nichols</u>, the court deemed it essential that the language employed in a jury charge clearly convey "the jury's responsibility to decide the verdict based on the facts and the law." <u>Id.</u>

The instruction given at Appellant's trial unambiguously conveyed the jury's responsibility and did not violate Appellant's due process rights under either the Fifth and Fourteenth Amendments to the United States Constitution or Article I, § 8 of the Tennessee Constitution. The trial court properly concluded that the "reasonable doubt" jury charge given at Appellant's trial was constitutional.

We hold that the trial court properly dismissed Appellant's petition. The judgment is affirmed.

_____
JERRY L. SMITH, JUDGE


CONCUR:



_____
DAVID G. HAYES, JUDGE


_____
THOMAS T. WOODALL, JUDGE